UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| MARTHA SIEBER, | Civil No. 10-1728 (JRT/JJK) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| BOND STREET, LTD and OFFICE MAX, INC. f/k/a BOISE CASCADE CORPORATION, | |
| Defendants. | |

Wilbur W. Fluegel, **FLUEGEL LAW OFFICE**, 150 South Fifth Street, Suite 3475, Minneapolis, MN 55402; Robert P. Christensen, **ROBERT P. CHRISTENSEN, PA**, 670 Park Place East, 5775 Wayzata Boulevard, St. Louis Park, MN 55416; James G. Vander Linden, **LEVANDER & VANDER LINDEN, PA**, 5775 Wayzata Boulevard, Suite 670, St. Louis Park, MN 55416, for plaintiff;

John C. Hughes, William M. Hart, Kathleen M. Ghreichi, and Jacalyn N. Chinander, **MEAGHER & GEER**, **PLLP**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for defendant Bond Street, Ltd.

Thomas A. Gilligan, Jr. and Nicholas J. O'Connell, **MURNANE BRANDT, PA**, 30 East Seventh Street, Suite 3200, St. Paul, MN 55101, for defendant OfficeMax, Inc.

Plaintiff Martha Sieber seeks to recover for eye injuries she sustained when using a Stebco luggage cart in November 2006. Sieber brought this products liability action against Bond Street, Ltd. ("Bond Street"), the current importer of the cart, and OfficeMax, Inc. ("OfficeMax"), the seller of the cart. Defendants separately move for summary judgment.

The Court will deny Defendants' motions because there remains a genuine issue of material fact regarding which defendant made the cart and therefore who is liable for the design defect claims. The Court further finds that, although a manufacturer's duty to warn is a legal determination, the Court requires more facts to determine whether the danger posed by the cart was an open and obvious danger.

## BACKGROUND

### I. SIEBER'S INJURY

On November 14, 2006, while working as an attorney for Progressive Insurance Co. ("Progressive"), Sieber passed through the security checkpoint of the Washington County, Minnesota courthouse with her wheeled luggage cart. (Nicholas J. O'Connell Aff., Ex. A, Martha Sieber Dep. at 22-23, 102-105, Feb. 1, 2011, Docket No. 28.) Sieber squatted, placed her briefcase and trial materials back on the cart, and secured the materials with the bungee cord that is part of the cart. (*Id.* at 106, 119-121.) As she was standing up, one end of the bungee cord detached from the cart, and the hook on the end of the cord struck Sieber in the eye. (*Id.* at 120-121.) Sieber suffered hyphema (i.e., blood in the chamber of the eye), intense pain, and, eventually, loss of her right eye. (*Id.* at 134-140.)

### II. THE LUGGAGE CART

The luggage cart being used by Sieber was a Stebco-brand luggage cart, model number G8-LC5. (O'Connell Aff., Ex. C, Joint Deposition Exhibits, Ex. 17, Docket No. 29.) The middle of a single bungee cord attaches to the rear axle of the cart; the ends

of the bungee cord are capped with plastic hooks that attach to the back or base of the cart, securing materials to the cart. (*See* O'Connell Aff., Ex. B, Michael Schwartz[1] Dep. at 99-100, Dec. 3, 2010, Docket No. 28.)



(O'Connell Aff., Ex. C, Joint Deposition Exhibits, Ex. 49, Docket No. 29.)

Sieber received the cart when she began working for Progressive in September 2004. (Sieber Dep. at 96.) The cart had been used by the previous occupant of her office, Jeff Mayer. (*Id.*; O'Connell Aff., Ex. M, Carolyn Guderian Dep. at 8, 17, Nov. 18, 2010, Docket No. 28.) Jeff Mayer began working as house counsel for Progressive in March 2002. (O'Connell Aff., Ex. N; *see* Guderian Dep. at 9.)

The parties dispute when the cart was originally purchased and whether Jeff Mayer was the first user of the cart. Carolyn Guderian, the legal assistant responsible for ordering office supplies (including the carts), testified that she did not recall ordering or

---

[1] Schwartz is the president and CEO of Bond Street, current manufacturer of the Stebco cart. (Schwartz Dep. at 9.)

receiving a luggage cart for Jeff Mayer.  (Guderian Dep. at 6, 8.)  Guderian also testified that, according to office procedure, at or about the time a new attorney was hired she would order a new luggage cart for their use.  (*Id.* at 8)  She initially testified that Jeff Mayer was a new attorney - that is, he did not replace an existing attorney.  (*See id.* at 8-9.)  Later in the same deposition, however, Guderian testified that she was unsure of the hiring sequence of the attorneys.  (*Id.* at 29.)  Jeff Mayer could not remember when he was provided with a luggage cart (immediately or several months after starting) or if his cart was new or used when he received it.  (O'Connell Aff., Ex. O, Jeffrey M. Mayer Dep. at 23-26, Apr. 21, 2011, Docket No. 28.)

### III.   THE CART'S IMPORTER AND DISTRIBUTOR

Until July 10, 2001, Stebco LLC ("Stebco") imported the Stebco-brand luggage cart, model number G8-LC5.  On July 10, 2001, Bond Street concluded an asset purchase of Stebco and became the cart's sole importer.  (John C. Hughes Aff., Ex. 3, Purchase Agreement, Docket No. 20.)  The purchase agreement specified that Bond Street "shall not assume any debts, liabilities, obligations or commitments of seller arising prior to the closing date."  (*Id.* at 4.)  Bond Street assumed ownership of the Stebco brand name and the Stebco trademarks.  (*See* Schwartz Dep. at 184-85.)  Stebco stopped selling the cart with the hook-ended bungee cord in September 2002.  (Schwartz Dep. at 74.)

At all relevant times, OfficeMax was the distributor that provided the Stebco carts to Progressive.  (*See* Guderian Dep. at 14-15.)  Progressive no longer has any record of its cart purchases from OfficeMax during 2000 to 2003.  (Guderian Dep. at 17-18, 22-

23.)  OfficeMax's records reflect only six sales of the Stebco-brand luggage cart, model number G8-LC5, to Progressive between 1997 and 2003.  (O'Connell Aff., Ex. K, Summary of OfficeMax Cart Sales, Docket No. 31.)  The sales have the following ship dates:

>March 1, 1999
>March 9, 2000
>November 6, 2000 (2 carts)
>November 21, 2001
>January 30, 2003

(*Id.*)

OfficeMax states that it "accepts Plaintiff's allegation that the Stebco cart was purchased new around the time Jeff Mayer began working at the Progressive Insurance House Counsel Office in March 2002" (OfficeMax's Mem. Supp. Summ. J. at 11, July 15, 2011, Docket No. 27), and it asserts there "is not evidence in the record to demonstrate that the Stebco cart . . . was purchased at any time prior to March 31, 2002." (OfficeMax Reply Mem. Supp. Summ. J. at 10, Aug. 10, 2011, Docket No. 42.)  Bond Street asserts Sieber is simply "unable to establish" the date the cart was manufactured. (Bond Street's Mem. Supp. Summ. J. at 2, July 14, 2011, Docket No. 19.)  Sieber admits that there is a factual dispute about when the cart was manufactured but asserts the cart was most likely made after July 11, 2001.  (Pl.'s Mem. Opp. Summ. J. at 2-3, July 27, 2011, Docket No. 35.)

Sieber has asserted both design defect and failure to warn claims against Bond Street and Office Max, alleging negligence and strict liability theories for both causes of

action. (Complaint ¶¶ 23, 24.) Bond Street and OfficeMax separately move for summary judgment.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to show that the entry of summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).[2]

### II. NEGLIGENCE

OfficeMax separately seeks dismissal of Sieber's negligence design defect and failure to warn claims. While Sieber pled both negligence and strict liability claims, the

---

[2] In this diversity action, the parties agree Minnesota law applies. *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of the forum state applies by default if choice of law issue is not raised by either party).

Minnesota Supreme Court has concluded that both claims are based on the same theory. *Johnson v. John Deere Co.*, 935 F.2d 151, 155 (8th Cir. 1991) (citing *Bilotta v. Kelley Co.*, 346 N.W.2d 616, 622 (Minn. 1984). "The distinction between strict liability and negligence in design-defect and failure-to-warn cases is that in strict liability, knowledge of the condition of the product and the risks involved in that condition will be imputed to the manufacturer, whereas in negligence these elements must be proven." *Bilotta*, 346 N.W.2d at 622. The Minnesota Supreme Court also observed that "a trial court could properly submit a design-defect or failure-to-warn case to a jury on a single theory of products liability." *Id.* at 623. Accordingly, the Court will analyze Sieber's claims under a single theory.

### III. DESIGN DEFECT

Sieber asserts that the cart was "defective and unreasonably dangerous." (Complaint ¶¶ 23(f), 24.) In order to establish a prima facie case for design defect, the plaintiff must establish "(1) that the defendant's product was in a defective condition unreasonably dangerous for its intended use, (2) that the defect existed when the product left the defendant's control, and (3) that the defect was the proximate cause of the injury sustained." *Bilotta*, 346 N.W.2d at 623 n.3.

Bond Street asserts that Sieber cannot prove an essential element − **which defendant's** product was defective− without using the unavailable doctrine of alternative

liability.[3]  Even if the doctrine were available, for it to apply the plaintiff must show that (1) all defendants acted tortiously; (2) the plaintiff was injured by the conduct of a defendant; and (3) the plaintiff cannot identify which defendant caused the injury. *Erickson v. Whirlpool Corp.*, 731 F. Supp. 1426, 1430 (D. Minn. 1990).

Sieber has not sought to invoke the doctrine of alternative liability and likely would be unable to do so under these facts.  Rather, Sieber will bear the burden at trial of demonstrating when the cart was sold and, therefore, which defendant had control of the product that caused the injury.  *See Bilotta*, 346 N.W.2d at 623 n.3 (enumerating elements of design defect).  Sieber has produced evidence that each defendant could have sold the luggage cart to Progressive, and neither defendant has demonstrated that Sieber will be unable to prove they sold the cart to Progressive.  Under these circumstances, it is the province of a jury to determine whether Sieber can meet its burden.  The Court will deny defendants' motions for summary judgment on the design defect claim.

## IV.   FAILURE TO WARN

Sieber also asserts that the cart was defective because the defendants failed to "adequately and reasonably provide pre-sale and post-sale warnings" regarding the "dangerous condition" of the cart.  (Complaint ¶¶ 23(e), 24(c).)  Although a manufacturer

---

[3] "The theory of alternative liability has not been adopted in Minnesota." *Carey v. Lofquist*, No. A07-373, 2007 WL 4304442, at *2 (Minn. Ct. App. Dec. 11, 2007), *review dismissed* (Minn. Feb 19, 2008) (quoting *Bixler by Bixler v. Avondale Mills*, 405 N.W.2d 428, 430 (Minn. Ct. App. 1987), *review dismissed* (Minn. June 30, 1987)); *see also Souder v. Owens-Corning Fiberglas Corp.*, 939 F.2d 647, 650 (8th Cir. 1991) (holding alternative liability is not available under Minnesota law).

has a duty to warn of foreseeable dangers, *Gray v. Badger Mining Corp.*, 676 N.W.2d 268, 274 (Minn. 2004), the latent-patent danger rule relieves a manufacturer of its duty to warn of a danger that would be open and obvious to anyone using the product. *Holowaty v. McDonald's Corp.*, 10 F. Supp. 2d 1078, 1084 (D. Minn. 1998) (citing *Mix v. MTD Prods., Inc.*, 393 N.W.2d 18, 19 (Minn. Ct. App. 1986)). Whether a duty to warn exists is a question of law for the Court. *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986).

Minnesota courts have held the following dangers are **open and obvious**: the dangers of aluminum conducting electricity, *Peppin v. W.H. Brady Co.*, 372 N.W.2d 369, 375 (Minn. Ct. App. 1985) (also noting that the dangers of a knife or axe cutting or dynamite exploding are obvious); the danger of hot coffee burning, *Holowaty*, 10 F. Supp. 2d at 1084; the danger of cleaning a blender when the blender is in operation, *Knott*, 2010 WL 4116602, at *5; the danger of fixing a lawn mower motor while the engine is running, *Mix v. MTD Prods., Inc.*, 393 N.W.2d 18, 20 (Minn. Ct. App. 1986); **the danger of a spring recoiling**, *Hoeg v. Shore-Master, Inc.*, 1994 WL 593919, at *1 (Minn. Ct. App. 1994). Courts in Illinois, Michigan, and Washington have found that a manufacturer has no duty to warn about the dangers of a bungee cord recoiling because the risk is open and obvious. *Copeland v. Stebco Prods. Corp.*, 738 N.E.2d 199, 204 (Ill. App. Ct. 2000) (noting the trial court found no duty to warn); *Fowler v. Jack's Corner Store*, No. 291020, 2010 WL 2793649, at *7-8 (Mich. Ct. App. July 15, 2010); *Nelson v. Stellar Seafoods, Inc.*, No. C05-1620Z, 2006 WL 3544607, at * 5 (W.D. Wash. Dec. 8, 2006).

Although the Court concludes that dangers of the bungee cord recoiling are obvious, it finds that additional factual circumstances inform whether the dangers of the luggage cart were open and obvious. Specifically, the Court notes that more information is needed about whether the size and design of the hook on the ends of the bungee cords affects the risk of the hook detaching, whether the location on the cart to which the hooks were attached affects their propensity to release, whether the size of the hooks made them appear to be safe, and whether the hooks appeared to be securely attached when clipped to different parts of the cart. Because the Court must hear additional evidence before determining if the cart's dangers were open and obvious, the Court will deny the defendants' motions for summary judgment on Sieber's failure to warn claims.

## V. PASSIVE MIDDLEMAN

OfficeMax asserts that Sieber's claims against it should be dismissed because Bond Street is the manufacturer of the Stebco cart and OfficeMax is a "passive middleman." In Minnesota, the "passive middleman" statute, allows for the dismissal of defendants other than the manufacturer from a products liability action if certain conditions are met. Minn. Stat. § 544.41; *Gorath v. Rockwell Int'l, Inc.*, 441 N.W.2d 128, 131 (Minn. Ct. App. 1989). First, the manufacturer must have answered or be required to have answered the complaint. Minn. Stat. § 544.41, subd. 2. Second, the non-manufacturer party must not have exercised significant control over the design or manufacturer of the product, had actual knowledge of the defect that caused the injury, or have created the defect that caused the injury. *Id.*, subd. 3. Finally, the plaintiff may

move to vacate the non-manufacturer's order of dismissal if it can show the manufacturer no longer exists or is unable to satisfy a judgment. *Id.*, subd. 2; *In re Shigellosis Litig.*, 647 N.W.2d 1, 7 (Minn. Ct. App. 2002) ("Dismissal is not appropriate if the plaintiff's action cannot reach a manufacturer or the manufacturer is insolvent.").

The Court finds that there is a material factual dispute about when the cart was purchased − and, thus, the identity of the manufacturer − because there is record evidence to support both a pre- and post-March 2002 purchase date. Therefore, the Court will not dismiss Sieber's claims against OfficeMax.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Bond Street's Motion for Summary Judgment [Docket No. 17] is **DENIED**.

2. Defendant Office Max, Inc.'s Motion for Summary Judgment [Docket No. 25] is **DENIED**.

3. Defendant Bond Street's Supplemental Motion for Summary Judgment [Docket No. 34] is **DENIED**.

DATED: February 27, 2012         _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.              JOHN R. TUNHEIM
                                  United States District Judge